UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| INDEPENDENT FINANCIAL SERVICES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 04-378-L |
| CCI Group, Inc., | ) | |
| Defendant. | ) | |

INDEPENDENT FINANCIAL SERVICES' OPPOSITION TO CCI GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT

Independent Financial Services, Inc., ("IFS") hereby opposes CCI Group, Inc.'s Motion For Summary Judgment, filed on or about June 21, 2005.

In support of this Opposition, the Court is respectfully referred to the Memorandum in Opposition to CCI Group, Inc.'s Motion for Summary Judgment and Independent Financial Services, Inc.'s Statement of Disputed/Undisputed Facts, both filed together with the Opposition.

Respectfully submitted,
Independent Financial Services, Inc.,
by its attorney,

Date: 7/8/05

Jeffrey S. Michaelson (#3299)
Michaelson & Michaelson
P.O. Box 622
7454 Post Road
North Kingstown, R.I. 02852
(401)295-4330
(Fax)295-5220

1. **There Is A Finder's Exception Which Would Apply In Any Event.**

Even were the Court to determine that IFS' role was, in fact, such that it must be deemed, as a matter of fact, to have "effected" a securities transaction, such a conclusion, even if made, does not compel the conclusion that IFS, under those circumstances, would be required to be a registered broker.

CCI pays lip service to the finder's exception, but does not appropriately address the factual inquiry which must be made to determine its applicability. CCI cites a single federal court case, *Couldack & Bohan, Inc. V. Societe Generale Sec. Corp.*, 93 F.Supp2d 220, 229 (D.Conn. 2000), which recognized the finder's exception, and then derisively dismisses (*see* IFS Memorandum, p.7, n.2) the SEC policies, practices and interpretation of the statute in this regard. Such dismissal of the interpretation of the very administrative agency charged with enforcement of the very statute at issue is inappropriate. In fact, the agency's interpretation of the statute is entitled to substantial deference. *See Chevron USA v. Natural Resources Defense Council*, 467 U.S. 837, 842-45 (1984).

Putting aside for the moment this substantial shortcoming in CCI's argument, even a review of the very cases which CCI cites reveal that there are substantial factual inquiries which, construing the facts in the light most favorable to IFS effectively preclude Summary Judgment. According to CCI, if a party is an intermediary to a transaction who brings the parties together and leaves the buyer and seller to negotiate the details and consummate the transaction, that party is a finder. Construing the facts in the light most favorable to IFS, it meets that definition in spades.

To counter this obvious shortcoming, CCI seeks to effectively rewrite the Agreement between IFS and CCI based upon the after-the-fact structure of the deal negotiated between CCI and Laurus, or between Laurus and McGinn, Smith (acting on behalf of Laurus). CCI correctly notes that the Agreement provided that IFS agreed to act as CCI's agent to negotiate to obtain commitments

for the financing. CCI Memorandum at 8. CCI then goes on to describe the transaction in detail, with a 'who knew what when' chronology of assumptions and factual assertions which construe facts exactly opposite to the manner prescribed by Rule 56 to conclude that, since the commitment ultimately included reference to a deal which included stock warrants and a convertible note feature, that means that IFS 'signed on' to effectuate such a transaction and, therefore, could not meet the incomplete and self-serving definition of "finder" which CCI urges.

In fact, the Agreement between IFS and CCI references the "arranging [of] acquisition, leasing and a construction/permanent financing for [Luxury Bo[u]tique Resort Acquisitions]." Complaint, Exh. A. The "financing" is described as a "loan." *Id.* The "placement fee" is, *inter alia*, 4% of the "Gross Loan Amount." *Id.* In short, there is not one whit of evidence that, as CCI suggests, IFS *signed on* to negotiate a securities transaction. Thus, the basic premise of CCI's argument that IFS could not, as a matter of law, fall within the finder's exception, as CCI defines it, fails, and with it, CCI's Motion for Summary Judgment.

Furthermore, CCI has not cited the appropriate test for the finder's exception. As CCI notes, there have been numerous administrative decisions regarding the fact-intensive application of this concept. In those decisions, the SEC's general policy is applied to particular facts. The general policy is set forth in the SEC's Guide to Broker-Dealer Regulation, which is located, in its entirety, at www.sec.gov/divisions/marketreg/bdguide.htm (excerpts attached, Exh. 3). According to the SEC, "finders" may or may not need to be registered, depending on analysis of four factors (SEC Guide, Exh. 3, p.22-23):

First, **does the party in question participate in important parts of a securities transaction, including solicitation, negotiation, or execution of the transaction?** In this case, there is no indication that IFS participated, at all, in a securities transaction under this factor. The

facts, as construed most favorably to IFS are that it did not solicit, negotiate or execute in any manner a *securities* transaction. As noted by Mr. Herriott, IFS SF Par. 3, 6, 8, IFS sought a loan commitment for a conventional mortgage loan.

Second, **does the party in question's compensation for participation in the transaction depend upon, or is it related to, the outcome or the size of the transaction or deal? Does it receive trailing commissions, such as 12b-1 fees? Does it receive other transaction-related compensation?** As to this factor, the payment, while related to the size of the transaction, was related to the size of the *loan*, as specifically set forth in the Agreement. Comp., Exh. A, IFS SF Par. 13. There was no mention in the Agreement of a securities transaction and, accordingly, the facts, as applied to this factor, do not fit within the scope of the substance of the inquiry.

Third, **is the party in question otherwise engaged in the business of effecting or facilitating securities transactions?** As to this inquiry, the facts are not in dispute. It is clear that IFS is not in the business of effecting or facilitating securities transactions. IFS SF 12, 18, 19.

Finally, the SEC inquires **whether the party in question handles the securities or funds of others in connection with securities transactions.** Again, the facts in this case do not support a finding, under any circumstances that the answer to this question would be "yes" *vis a vis* IFS.

The SEC Guide concludes that, if the answer to any of these four questions is "yes,", the party "*may* need to register as a broker." Exh. 3, at 2, 3(emphasis added). Thus, as noted, construing the facts in the light most favorable to IFS, the answer to each question is "no," and, furthermore, even if the answer were "yes," the result is an equivocal "may" need to register, not the legal slam dunk which would entitle CCI to judgment as a matter of law.

CCI's citation to *Regional Properties II*, 752 F.2d 178, is inapposite to the facts of this case. In *Regional II*, the defendant, Financial & Real Estate Consulting, specifically and unambiguously

entered into an agreement to market *limited partnership interests* in real estate developments. Thus, by the very terms of the agreement, the defendant, in that case, was engaged to market securities. That factual scenario is entirely different from the scenario in this case, where the engagement did not specify the marketing of securities, but, instead, the seeking of a loan commitment. Comp. Exh. A, IFS SF Par. 21. As such, in terms of establishing that IFS was, or was not, engaged in an endeavor which requires registration, *Regional II* is of no help.

In *Couldack*, also cited by CCI, the Plaintiff was effectively brokering trades in non-equity instruments, such as bonds, and using defendant to clear the trades. When the defendant discovered that the Plaintiff, to act in that regard, was required to be a registered broker, the defendant sought to terminate the contract and plaintiff sued. The Court held that the Plaintiff's role did, indeed, require registration and, on that basis, concluded that Defendant was within its rights to terminate the contract. In *Couldack*, the Court recognized the existence of the finder's exception, but found that the Plaintiff, in that case, did not fit within it, because, unlike a finder situation, the 'buyer' and 'seller' of what was undisputedly a security, were never put together to complete their transaction. *See Couldack*, 93 F.Supp.2d at 229. Given that conclusion, the Court needed go no further in its analysis. However, the suggestion that *Couldack's* brief foray into the concept somehow excludes IFS from the definition of a finder, as a matter of law, extends the case far beyond its analytical utility.

For these reasons, there are factual issues regarding whether IFS is a "finder" which would not be required to be registered as a broker even were it otherwise required to do so – which issues, respectfully, IFS submits preclude Summary Judgment in this matter.

**C. <u>The Claim That The Agreement Is Void Is Procedurally And Legally Defective.</u>**

CCI asserts that it is entitled to Summary Judgment based upon an argument that the

Agreement between CCI and IFS is void as a matter of law. While the many factual issues wich preclude granting Summary Judgment on that basis are discussed below, the argument has a fatal procedural flaw which precludes the granting of Summary Judgment before the merits are even considered.

As CCI notes, a contract in violation of the Securities Act is *voidable*. *See* CCI Memorandum, p.10.[6] In this case, *there is no claim for rescission*. Such a claim, in order to be pursued, should be asserted as an affirmative counterclaim – a claim by a party that it is entitled to, and wishes to, void a contract pursuant to the law.

In this case, there is no extant counterclaim. Instead, there is an affirmative defense that the contract is "voidable." That is, the affirmative defense asserts that the agreement is voidable, but there is no claim seeking to void the contract.

Under these circumstances, IFS respectfully submits that CCI's Motion for Summary Judgment is fatally defective in that the claim for rescission has not been set forth in a manner which can, under these circumstances, be pursued through a Motion for Summary Judgment. Since there has been no such affirmative claim for relief, there is no basis to grant Summary Judgment against IFS on the breach of contract claim.[7]

---

[6] While the statute states, as CCI notes, that such a contract is "void," courts have held, as CCI further notes, that such a contract is voidable, not void. *See*, *e.g.*, *Bache Halsey Stuart, Inc. V. Killop*, 509 F.Supp. 256 (E.D. Mich. 1979). As discussed further, *infra*, such rescission is subject to equitable principles which might preclude voiding an otherwise voidable agreement.

[7] In addition, the failure to assert rescission as a counterclaim precludes formal assertion of equitable defenses to such a claim. Under these circumstance, the failure to affirmatively assert the claim for rescission should preclude Summary Judgment. If, in fact, the law were that a contract were "void" under particular circumstances, a defense asserting that the contract was void might be an appropriate vehicle for a Summary Judgment.

**D. <u>Even If IFS Were Required To Be Registered, Fact Issues Preclude Rescission Of The Contract.</u>**

CCI notes, correctly, that a contract made in violation of the provisions of the Securities act is voidable at the instance of an innocent party.

Here, as noted above, there is nothing in the contract which violates the Securities Act, because it relates to a loan and payment of a fee for the successful placement of the loan. The loan, in fact, came to fruition, albeit as part of what CCI and Laurus (or CCI and McGinn, Smith) negotiated to include more than just the loan, and neither the loan itself nor the Agreement are in violation of the Securities Act. [8]

Furthermore, CCI stumbles when it relies on *Regional I* to support its claim that the contract is void on a number of grounds. First, CCI asserts, that, as a matter of fact, CCI falls within the class of persons the Act is intended to protect. In *Regional I*, the Fifth Circuit gave this issue rather short shrift, and its analysis is not terribly helpful in the context of this Motion for Summary Judgment. The *Regional I* Court noted that the class of persons which the statute is designed to protect include investors and the public interest, 678 F.2d at 561, but, in only the vaguest terms, determines that the protection extends beyond that. Without much analysis, the Court held that, in that case, the Plaintiff was within the class of persons which the Act was designed to protect. However, there is nothing

---

[8] In *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189 (3rd Cir. 2001), the Court catalogued numerous cases which distinguish between contracts which specifically require transactions or actions which must be performed by a registered broker and those which do not explicitly include such a requirement, but do have a tangential or collateral aspect that includes some form of security. In noting that the *Regional* Courts did not make such a distinction, the *Colkitt* Court noted that the *Regional* Court's conclusion, based upon the facts of that case, was consistent with the dichotomy. Thus, the *Colkitt* Court appears to have adopted the holding of, *e.g. Drasner v. Thomson McKinnon Securities, Inc.*, 433 F.Supp. 485 (S.D.N.Y. 1977), that the appropriate scope of inquiry is whether the contract at issue, by *its* terms, are 'made in violation of' or 'the performance of which involves the violation of' the statute. *See, Colkitt*, 272, F.3d 189, *citing/quoting Drasner*, 433 F.Supp. At 501-02.

in *Regional I* which can be relied upon for any blanket assertion or for the proposition that, in this case, CCI is within the class of protected persons.

As to CCI's alleged 'innocence,' the facts as they must be construed do not support such a characterization. Mr. Casolo was aware, since before the Agreement was entered into with IFS that IFS was not a registered broker, IFS SF, Par. 18. Mr. Casolo further knew that McGinn, Smith, a registered broker, had negotiated all of the paperwork which related to the securities aspect of this transaction, IFS SF, Par. 4, 5, 29, 35, and was to be paid a fee for its work. IFS SF, Par. 36, 37.

Based upon these facts, construing them in the light most favorable to IFS, CCI is not entitled to Summary Judgment.

**E. <u>Equitable Defenses To Rescission, Fact Dependent, Preclude Voiding The Contract.</u>**

The result of *Regional I, supra*, was that the matter was remanded for consideration of whether equitable principles precluded voiding of the contract in that case. *Id,* at 563.

In *Regional I*, the specific issue/defense identified was whether the Plaintiff could claim rescission where there was an allegation that it knew that defendant was not a registered broker-dealer, yet went ahead with the relationship. Thus, *Regional I* recognizes that equitable defenses may apply, and specifically recognizes that the fact in this case – *to wit* that CCI knew full well since prior to the entry into the Agreement with IFS (*see* IFS SF Par. 18) that IFS was not a registered broker – can defeat a claim for recession.

Construing the facts in the light most favorable to IFS, there are material facts which preclude rescission of the Agreement because they conceivably support equitable bars to any claim (even had they been affirmatively asserted) for rescission. As such, the Motion for Summary Judgment should be denied.

**F. The "Draw Down" Is An Issue Of Fact.**

CCI self-servingly seeks to take advantage of a provision in the Agreement which provides that IFS fee is not to be paid until funds are 'drawn down.' Naturally, CCI claims that the funds placed in a *CCI Account* were not "drawn down." This self-serving assertion does not comport with Rule 56's requirement that facts be construed in the light most favorable to the non-moving party.

In this case, it is clear that all funds were delivered to an account for CCI. The fact that they were not used, and were subject to a Restricted Account Agreement does not, *ipso faco*, establish that the funds were not 'drawn down.' In fact, the opposite conclusion is more likely, and compelled, IFS respectfully submits, in the context of CCI's Motion for Summary Judgment. For example, if CCI had received a line of credit, from which it could draw, its argument might have some force. However, that is not the case here: the funds were place in a *CCI account* (ISF SF 39); CCI was paying interest on the funds (IFS SF Par. 33); CCI expected, up to at least days before the closing, that IFS would be paid $420,000.00 (ISF SF Par. 37), a belief inconsistent with the position that the funds had not been "drawn down."

Finally, CCI admits that, even under its argument, a substantial portion of the funds involved in the transaction were used by CCI, so this argument is not dispositive of the case, or even an entire Count and, as such, it seems not to make sense to grant Summary Judgment on this issue regardless of the analysis/findings of the Court.[9]

---

[9] In addition, the so-called "unwinding" of the transaction, which CCI asserts has occurred, whereby some of the money was 'returned' to Laurus is the subject of a Motion to Compel by IFS. Depending on what is revealed by the outcome of that Motion, additional fact issues may become apparent which preclude Summary Judgment. For example, Mr. Casolo, who wears a McGinn, Smith hat and a CCI hat is deeply involved in the return of that money so that he could use other money for a substantial transaction. By using the other money, upon information and belief, McGinn, Smith's fee goes from 4% on the Laurus funds to 10% on the replacement funds. These facts, with the obvious conflict between the interests of McGinn, Smith and IFS, and Mr. Casolo's role in effectively preventing the use of the Laurus money in

### G. The Tort Claims Are Not Covered By The Motion For Summary Judgment.

While CCI purports to move for Summary Judgment on all Counts of the Complaint, it has not moved for Summary Judgment on the Tort Count. The basis of that Count is set forth in the Amended Verified Complaint, Par.'s 31-38. In light of that fact alone, CCI's Motion for Summary Judgment as to Count 4 should be denied.

## III. CONCLUSION

For the foregoing reasons, IFS respectfully submits that there are material facts in dispute in this matter which preclude the granting of Summary Judgment as prayed for by CCI Group, Inc. and, accordingly, pray that CCI Group, Inc.'s Motion for Summary Judgment be denied.

Respectfully submitted,
Independent Financial Services, Inc.,
by its attorney,

Date: 7/8/05

Jeffrey S. Michaelson (#3299)
Michaelson & Michaelson
P.O. Box 622
7454 Post Road
North Kingstown, R.I. 02852
(401)295-4330
(Fax)295-5220

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was mailed, by regular mail, postage prepaid, on this 8 day of July, 2005, to the following attorney(s) of record:

Mark W. Freel
Edwards & Angell, LLP
2800 Financial Plaza
Providence, R.I. 02903

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing document was mailed, by regular mail, postage prepaid, on this 8 day of July, 2005, to the following attorney(s) of record:

Mark W. Freel
Edwards & Angell, LLP
2800 Financial Plaza
Providence, R.I. 02903

______________________________

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| INDEPENDENT FINANCIAL SERVICES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 04-378-L |
| CCI Group, Inc., | ) | |
| Defendant. | ) | |

**MEMORANDUM IN OPPOSITION**
**TO CCI GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION[1]

This matter was commenced by Independent Financial Services, Inc. ("IFS"), a Connecticut corporation with its principal place of business in Westerly, Rhode Island. The defendant is CCI Group, Inc. (CCIG"), a Utah Corporation with its principal place of business in New York. Comp.[2], Par. 1, 2.

IFS is in the business of, *inter alia*, providing financial advice and assistance to various individuals or entities in obtaining financing for a variety of purposes. Comp. Par. 6.

CCIG is in the business of owning and operating certain resort properties located in the Caribbean. Comp. Par. 7

Cash-strapped, CCIG came to IFS for assistance in obtaining financing for the purpose of

[1] A general outline of the facts is set forth in this Introduction. Specific facts related to the Argument are set forth within the body of this Memorandum. The Statement of Disputed/Undisputed Facts sets forth material facts which preclude the granting of Summary Judgment, IFS respectfully submits, in greater detail.

[2] "Comp." refers to the Verified Amended Complaint.

purchasing, leasing and/or building additional resort properties. IFS SF[3] Par. 3.The parties executed an Agreement, effective June 17, 2004, which provided that IFS would seek and negotiate for commitments for the financing sought, and provided for IFS' fees and compensation.

The Agreement provides that IFS' right to negotiate on behalf of CCIG became exclusive upon receipt of a reasonable lender letter of interest, and remained exclusive for the duration of the Agreement. *See* Comp., Exh. A, Second Par., Par. 5.

Thereafter, IFS did, in fact, obtain a commitment from Laurus Master Funds, a Cayman Island Company, for financing in the amount of Ten Million Five Hundred Dollars ($10,000,000.00), which commitment was accepted by CCIG. The commitment was subsequently modified to be increased to Ten Million Five Hundred Thousand Dollars ($10,500,000.00). Comp. Par. 17.

The loan was scheduled to close, and did close, on July 29, 2004. Comp. Par. 19. Prior to that date, various communications were exchanged between CCIG, IFS and Laurus concerning payment of IFS placement fee by wire transfer to the accounts designated by IFS and the distribution of capital stock of CCIG as instructed by IFS, both as provided for by the Agreement. IFS SF par. 38. Notwithstanding this communication, at a closing held on July 29, 2004, IFS' placement fee was not paid out of the loan proceeds, nor was the common stock as provided for by the Agreement distributed. IFS SF, Par. 28.

The Verified Complaint in this matter contains some four counts, as follows:

COUNT I – Breach of Contract, alleging that CCI did not make payments as required by the Agreement.

COUNT II – Constructive Trust, seeking to have the Court impose a constructive trust on so much of the loan proceeds as were equitably the property of IFS.

COUNT III – Specific Performance, seeking to compel CCI to issue stock/warrants as

---

[3] "IFS SF" refers to IFS' Statement of Disputed/Undisputed Facts.

provided in the Agreement.

COUNT IV – Tort claims, including fraud, breach of fiduciary duty and interference with advantageous business relations.

CCI purports to move for Summary Judgment on all Counts. However, upon inspection, CCI has not offered any argument supporting its Motion with respect to Count IV.

## II. ARGUMENT

CCI's argument is without merit. There are numerous facts set forth, by CCI, as not being in dispute which are clearly in dispute and, for purposes of the instant Motion, must be construed in the light most favorable to IFS. In addition, CCI's argument fails on legal grounds.

### A. There Is A Factual Question Whether The Instrument At Issue Is A Security.

CCI's Motion for Summary Judgment is premised on the unstated, but presumed notion that the transaction at issue involves a security which would require, if it were brokered or involved a dealer, that that broker or dealer be registered. In fact, as to that presumed issue, there is substantial doubt, at least, and resolution of that doubt involves factual issues beyond the scope of an appropriate Motion for Summary Judgment.

CCI cites 15 U.S.C. Sec. 78c(a)(10) for the proposition that "any note" is a security. While that statutory citation appears to embrace the note at issue in this suit, CCI's 'hook, line and sinker' acceptance of this concept as the law is misplaced. The United States Supreme Court, in the case of *Reves v. Ernst & Young*, 494 U.S.56 (1990) noted that, despite the broad definition contained in the statute, the task of defining what particular instruments are securities under the federal law "ultimately [falls] to the federal courts...." *Id.* at 62. The Court noted as follows:

> While common stock is the quintessence of a security, *Landreth Timber*, *supra*, 471 U.S. at 693, and investors therefore justifiably assume that a sale of sock is covered by the Securities Acts, the same simply cannot be said of notes, which are used in a variety of settings, not all of which involve investments. Thus, the phrase "any note" should not be interpreted to mean literally "any note," but must be understood against

> the backdrop of what Congress was attempting to accomplish in enacting the Securities Acts. (footnote omitted).

*Id.* at 62-63.

The *Reves* Court, having rejected the *per se* approach taken by CCI in this Motion, instead adopted the fact-intensive so-called "family resemblance" test to determine whether a particular note was a "security" under federal law.

The family resemblance test excludes an enumerated list of notes from the definition of "security" and those which bear a "family resemblance" to the enumerated list. Among these are notes secured by a mortgage on a home. *See Reves*, 494 U.S. 56 at 65, *citing Exchange Nat'l Bk. of Chicago v. Touch Ross & Co.*, 544 F.2d 1126(2d Cir. 1976).

The "family resemblance" test is a fact-intensive exercise which examines four factors to determine whether a particular note overcomes the presumption that it is a security: first, the motivations of the buyer and seller are examined – if the seller is selling the note to raise money for the general use of the business or a substantial investment, and the buyer enters the transaction primarily for the purpose of earning interest on the note, the factor militates towards finding the instrument a "security". In this case, the seller was specifically raising money for use in the purchase of real estate which would be secured by a mortgage, as set forth in the restricted account agreement (IFS SF 40) , and as stated in the agreement between IFS and CCI (Comp., Exh A) and as stated by Mr. Casolo.(IFS SF 6). The "buyer" in this instance, Laurus, was entering a secure and collateralized transaction, similar to a conventional mortgage. The funds, while placed in an account under CCI's name, Exh. 1[4], were subject, by agreement, to a restriction on withdrawals which required that the money only be spent on real estate purchases which were further collateralized by mortgages. Exh.

---

[4] Numbered Exhibits reference in this Memorandum are attached to the Statement of Disputed/Undisputed Facts.

2. Under these circumstances, taking the facts in the light most favorable to IFS, IFS respectfully submits that, as to this factor, the transaction bears a "family resemblance" to a conventional mortgage loan.

The second factor considered is the instrument's plan of distribution, *to wit*, is it something in which there is common trading or investment – if not, this factor militates against the finding that the instrument is a security. Here, the effective instrument was not what would normally, it is respectfully submitted, be considered an instrument suitable for generic issuance or market trading. The instrument was specific to the Laurus transaction and gave specific rights to Laurus through the Restricted Account Agreement and the right to a mortgage in Laurus' name. That and other 'Laurus-specific' provisions render it not the marketable type of instrument which would normally be considered to be the type of security which must be regulated to protect the investing public – "The fundamental purpose undergirding the Securities Acts is to 'eliminate serious abuses in a largely unregulated securities market,' *Reves*, 494 U.S. at 60, *quoting United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 849(1975). Thus, applying this factor in the light most favorable to IFS, it is respectfully submitted that the Laurus transaction bears a family resemblance to a standard commercial mortgage, not a "security."

Third, public expectations are examined – is the instrument something which the public generally expects is a "security"? If not, this factor militates against finding the instrument to be a security. In this case, there is no indication that there was ever any intention or anticipation or reasonable expectation that the *public* would ever even be aware of this instrument, much less have an expectation that it was a regulated security. The instrument was strictly between Laurus and CCI and, in light of that, this factor militates strongly against the finding that the instrument was a "security" for purposes of the Securities Act.

The final factual inquiry in applying the *Reves* family resemblance test is whether some other factor, such as the existence of another regulatory scheme, significantly reduces the risk of the instrument – if so, this factor militates against finding a particular instrument to be a security. In this case, as noted, the instrument and related instruments specifically included a provision that the funds, although placed in a CCI account, were part of the security for the note and that those funds could not be used for the purchase of real estate unless and until there was a first mortgage position on the acquired property and, in addition, that the money used for that first mortgage position was not more than 60% of the value of the property. Exh. 2. In sum, this transaction was a virtually *no-risk* situation for Laurus. Thus, this final factor strongly militates against a finding that the transaction at issue in this suit involved a security.

In sum, CCI's Motion for Summary Judgment presumes, without analysis or even apparent recognition of the Supreme Court's significant involvement in this issue, that the transaction involves a Security which is subject to the Securities Act. Since the resolution of that very issue, which is the foundation of CCI's entire argument requires resolution of myriad fact issues, and since all such fact issues must be resolved in the light most favorable to IFS, it must be concluded, in this context, that the instrument is *not* a security and CCI"s Motion for Summary Judgment consequently fails before it even leaves the gate.

**B. <u>IFS Was Not Required To Be A Registered Broker-Dealer.</u>**

CCI argues that, in this transaction, IFS was required to be a registered broker-dealer under federal law. Again, this conclusion is based upon presumptions and conclusions of fact that are inconsistent with the requirements of Rule 56, Fed.R.Civ.Proc. and which misapply the applicable law.

CCI appears to argue that, in this transaction, IFS' activities meet the definition of a "broker"

which must be registered in order to legally perform that function. CCI Memorandum, p. 5.[5] Again, as with the definition of "security," CCI only scratches the surface of this factually complex legal issue.

CCI's argument is internally inconsistent. Throughout their Memorandum, CCI acknowledges that IFS' role was strictly limited and did not involve the negotiation of the specific terms of the 'deal,' the provisions of the note/instrument at issue or otherwise involve a factual basis to even assert that IFS is "engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. Sec.78c(a)(4)(A). *See* CCI Memorandum, p.3.

First of all, IFS has clearly stated that it is *not* in the business of effecting transactions in securities. IFS SF Par. 12, 18, 19. Second of all, in this case, IFS' limited role, as a matter of fact and, it is respectfully submitted as a matter of law, cannot legitimately be viewed as "effecting" a transaction. By all accounts, IFS' role was limited to the terms of its engagement – finding a lender and obtaining a commitment. IFS SF, Par. 22, 23, 27.. IFS had no role in the preparation of the documents and was not at the closing. IFS SF 26, 35.

Thus, there are factual issues which, if resolved in IFS favor, compel the conclusion that it is not *in the business of effecting transactions in securities* and, in addition, that, in this case, IFS did not *effect* such a transaction in any case. As such, construing the facts in the light most favorable to IFS, it was not a broker which was required to be registered under the securities act.

---

[5] While CCI uses the term "broker-dealer" in various places, there are substantial differences between a broker and a dealer. The definitions of Broker and Dealer are contained in 15 U.S.C. Sec. 78c. The definition of "dealer," "any person engaged in the business of buying and selling securities for such person's own account through a broker or otherwise," 15 U.S.C. Sec. 78c(a)(5), seems not to apply to any version of the facts at issue in this suit.