**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| INDEPENDENT FINANCIAL SERVICES, INC., | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 04-0378-L |
| CCI GROUP, INC., | : | |
| Defendants. | : | |

**AFFIDAVIT OF MARK C. CASOLO**

I, Mark C. Casolo, being under oath, hereby depose and say as follows:

1. I am Chairman of Plaintiff CCI Group, Inc. ("CCI"), a Utah corporation that owns and operates certain resort properties in the Caribbean. I am over the age of eighteen (18). All matters stated herein are based on my personal knowledge.

2. In May and June of 2004, I had a series of communications on behalf of CCI with Richard Herriott ("Herriott") of Plaintiff Independent Financial Services ("IFS"). Those communications ultimately led to the execution of a letter agreement (the "Agreement") between CCI and IFS on or about June 17, 2004.

3. In those discussions, IFS represented to CCI that it had prior dealings with Laurus Master Funds, Ltd. ("Laurus") in securing financing, and therefore would be of great assistance to IFS in negotiating a transaction with Laurus.

4. CCI relied on the foregoing statements, in part, in entering into the Agreement with IFS.

5. Ultimately, after execution of the Agreement, IFS took virtually no actions or steps on CCI's behalf in negotiating any aspect of the Securities Purchase Agreement ("the Securities Agreement") between CCI and Laurus dated July 29, 2004.

6. Ultimately, CCI decided, in consultation with Laurus, either at the time of the closing with Laurus or immediately thereafter, that IFS was not entitled to payment of any fee from the Securities Agreement with Laurus. CCI reached this conclusion because IFS did not, in fact, negotiate any aspect of the Securities Agreement or the underlying transaction with Laurus on CCI's behalf, as contemplated by the Agreement, and because IFS was not legally entitled to payment of a fee from a transaction that clearly involved the placement or sale of securities. Moreover, no funds had been "drawn down" at that time.

7. On or about April 22, 2005, as reflected in the Form 8-K filed by CCI with the Securities and Exchange Commission ("SEC") on April 27, 2005, CCI drew down the sum of $4.7 million from funds made available by Laurus pursuant to the terms of the aforementioned Securities Agreement and used those funds, with Laurus' consent, to make certain payments as set forth in the aforementioned Form 8-K.

8. Shortly thereafter, CCI returned approximately $5.55 million of the funds originally made available by Laurus pursuant to the terms of the Securities Agreement, on terms agreed to between CCI and Laurus. Therefore, of the $10.5 million originally made available to CCI by Laurus on July 29, 2004, pursuant to the terms of the Securities Agreement, funds in the amount of approximately $5.55 million were never used or "drawn down" by CCI.

Mark C. Casolo

STATE OF NEW YORK
COUNTY OF ALBANY

Subscribed and sworn before me, this 2nd day of June, 2005.

Notary Public
My Commission Expires:

CAROLYN GRACEY
Notary Public, State of New York
No. 01GR6037985
Qualified in Rensselaer County
Commission Expires March 6, 2006