**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| INDEPENDENT FINANCIAL SERVICES, INC., | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 04-0378-L |
| CCI GROUP, INC., | : | |
| Defendants. | : | |

**DEFENDANT CCI GROUP'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to this Court's Order, dated September 8, 2005 and Rule 34 of the Rules of Civil Procedure, Defendant CCI Group, Inc. ("CCI") hereby supplement's its responses to Plaintiff Independent Financial Services, Inc.'s ("IFS") Request for Production of Documents.

**General Objections**

1. Defendant objects to the following interrogatories to the extent that they seek the disclosure of any information protected by the attorney-client privilege and/or the work product doctrine.

**Requests**

**Request No. 20:** All documents setting forth any agreements between CCI and McGinn, Smith and/or between Mark Casolo or any other officer, director or shareholder of CCI and McGinn, Smith.

**OBJECTION:** CCI objects to the foregoing request on grounds that it is unduly broad and overly burdensome in its scope. The request lacks any reasonable limitations in terms of the scope of the time frames or subjects covered. As such, the request is not reasonably calculated to lead to the discovery of admissible evidence.

**RESPONSE:** Notwithstanding the foregoing objection, and without waiving same, see CCI's Response to Request No. 19.

**SUPPLEMENTAL RESPONSE:** See documents produced herewith.

CCI GROUP, INC.

By its Attorneys,

Mark W. Freel (#4003)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, Rhode Island 02903
(401) 274-9200
(401) 276-6611 Telecopy

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of October 2005, I caused a true copy of the within Supplemental Responses to Plaintiff's Request for Production of Documents to be sent by regular mail, postage prepaid, to:

Jeffrey S. Michaelson, Esq.
Michaelson & Michaelson
P. O. Box 622
7454 Post Road
North Kingstown, RI 02852
(401) 885-7199 (fax)

MCGINN, SMITH & CO., INC.

INVESTMENT BANKERS • INVESTMENT BROKERS

ONE CAPITAL CENTER

99 PINE STREET
(518) 449-8131

ALBANY, NEW YORK 12207
FAX (518) 449-4894

June 19, 2002

Fred Jackson
Caribbean Clubs International
237 Park Avenue
21st Floor
New York, NY 10017

Dear Mr. Jackson:

This letter will confirm our understanding with you with respect to our services as broker and financial advisor in connection with your interest in utilizing the services of McGinn, Smith and Co., Inc., on behalf of Caribbean Clubs International, (the Company).

During the period from the date hereof through October 19, 2002, McGinn, Smith & Co., Inc. ("MS"), and it's agents, and consultants shall provide advice and consultation regarding the companies planned acquisition of the hotels commonly known as The Sugar Mill and The Palmetto Hotel on the islands of Tortola and Barbuda (respectively) in the British Virgin Islands.

In connection therewith, McGinn, Smith will:

A. Advise and assist the Company in recapitalizing the Company's financial structure, and

B. Advise and assist in negotiating the transaction with prospective investors.

C. Act as the placement agent on behalf of the company and the proposed issuance of securities.

McGinn, Smith shall be paid a fee of:

1. Concurrent with the consummation of the offering(s), the Company shall pay in cash to MS a fee (the "Fee") equal to:
    a. 10% of the gross proceeds raised in connection with the offering.

b. 7% of the purchase price in connection with the acquisition of the Barbuda property known as The Palmetto Hotel.

a. Concurrent with the consummation of the offering(s), MS and it's designated affiliates shall receive warrants representing ownership of the company equal to 13% of the fully diluted common shares of the company pay able on a prorata basis on the date of each closing. The 13% fully diluted common shares shall reflect a $2.5 million amount of gross proceeds, and shall be on a prorata basis in the gross proceeds is more or less than the $2.5 million. Such warrants shall have a five-year term, and shall be exercisable at $0.01 per share, and will be subject to contain piggyback registration rights.

All funds raised in connection with this offering shall be placed in an escrow account at Charter One Bank, and as a condition to funds being wired to the companies account, any fees due and payable to MS must be paid.

In addition to the fee payable to MS under this Agreement, the Company agrees to reimburse MS upon request for it's out of pocket expenses incurred in connection with it's services under this Agreement whether or not the offering is consummated.

MS retains the right of first refusal for any subsequent offering of securities by the company for a period of 24 months. Such rights shall be granted and irrevocable upon a successful closing of securities as part of this offering. All such offerings of securities shall be on a "best efforts" basis unless both parties agree in writing otherwise.

You shall indemnify and hold us harmless against any and all loss, claim, damage, expense or liability, joint or several (including but not limited to any and all expenses incurred in investigating, preparing or defending against all litigation, commenced or threatened, or any claim whatsoever) to which we may become subject under any statute or at common law or under the laws of foreign countries, arising out of or based upon any untrue statement or alleged untrue statement of material fact contained in any statement signed by you concerning the Company. McGinn, Smith shall notify the Company of any such claims and the Company shall have the opportunity to defend such claims.

Representations and Warranties

The Company represents, warrants and agrees that:

a) On the date hereof the Company is, and at all times to and including the time the Securities and/or Assets are sold by the Company (the "Closing Time") will be, duly incorporated, validly existing and in good standing as a corporation under the laws of the

State of Delaware, with full power and authority to conduct its business as now being conducted and to own its properties and to perform its obligations under this Agreement.

b) All action required to be taken by the Company as a condition to the sale of the Securities and/or Assets to qualified purchasers has been, or prior to Closing Time will have been, taken and upon payment and delivery therefore the Securities will be binding obligations of the Company enforceable in accordance with their terms except as such enforceability may be limited by bankruptcy, insolvency, reorganization and other laws or equitable principles now or hereafter enacted relating to or affecting the enforcement of creditor's rights generally.

c) From the commencement of the Offering Period through Closing Time, the Offering Documents will not contain an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading; provided, however, that the representations and warranties in this paragraph shall not apply to statements contained in or omitted from the Offering Documents made in reliance upon or in conformity with information furnished to the Company by you or on your behalf or omissions from the Offering Documents relating to you or your activities with respect to the Company and/or the Securities.

d) There is no undisclosed litigation or governmental proceeding pending, or to the knowledge of the Company threatened, against, or involving the property or business of the Company which would materially and adversely affect the financial condition of the Company.

e) The balance sheet and income statement of the Company, present fairly the financial position of the Company as of the dates thereof, and there has been no material adverse change in the financial condition of the Company since the date of the most recent of such financial statements.

f) The forecasts of operating expenses, estimated cash flow, taxable income, depreciation and the assumptions on which they are based which are expected by the Company to be included in the Offering Documents, are believed by management of the Company to be reasonable.

Unless otherwise specified in writing, all amounts are in US dollars. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York. Any and all disputes arising either under this Agreement or in relation to any services to be provided pursuant to this Agreement between the parties shall be resolved exclusively in the State Courts of New York in Albany County, New York.

If the foregoing is in accordance with your understanding of our agreement, kindly sign and return to us a counterpart hereof whereupon this Letter Agreement together with all

June 23, 2005

Mark C. Casolo
Chairman
CCI Group, Inc.
405 Park Avenue
New York, NY 10022

Dear Mr. Casolo:

This letter will confirm our understanding with you, with respect to our services as broker and financial advisor in connection with your interest in seeking non-bank financing for CCI Group, Inc. (the "Company").

During the period from the date hereof through December 23, 2005, The Westrock Advisors, Inc. shall have the right to offer for sale an interest in the Company, including but not limited to, common stock, preferred stock, convertible preferred stock, debentures, convertible debentures of the Company (the "Securities") or any assets of the Company (the "Assets"). Westrock Advisors, Inc. will use its best efforts to obtain acceptable purchasers of the securities or assets offered.

In connection therewith, Westrock Advisors, Inc. will:

a) Assist CCI Group, Inc. in preparing financial documents and offering documents (the "Offering Documents");

b) Advise and assist CCI Group, Inc.. in recapitalizing the company's financial structure, and

c) Advise and assist in negotiating the transaction.

It is agreed that Westrock Advisors, Inc.. shall have earned and be entitled to a fee as set forth below if during the term of this Agreement:

a) We procure a party ready, willing and able to purchase any Securities of the Company at a price and on the terms that are satisfactory to you as evidenced by an executed Agreement; or

b) The Company sells Securities and/or Assets of the Company to a party or through a party, either procured by us or referred by us.

c) We procure a party that is willing to commit financing on other acceptable terms as evidenced by an executed agreement.

The fee earned hereunder shall be equal to eleven Percent (11%) of the capital raised including but not limited to the value of any agents and/or strategic partners, lines of credit or any other financial assistance provided to the Company through the efforts of Westrock Advisors, Inc. Westrock Advisors, Inc. shall also receive 1,000,000 five year term warrants in the Company.

If within one year after December 23, 2005 the Company sells or transfers any or all of its Assets or Securities of the Company are sold or transferred to a party with whom Westrock Advisors, Inc. introduced to the Company, the Company shall pay Westrock Advisors, Inc., the fee set forth herein above.

You shall indemnify and hold us harmless against any and all loss, claim, damage, expense or liability, joint or several (including but not limited to any and all expenses incurred in investigating, preparing or defending against all litigation, commenced or threatened, or any claim whatsoever) to which we may become subject under any statute or at common law or under the laws of foreign countries, arising out of or based upon any untrue statement or alleged untrue statement of material fact contained in any statement signed by you concerning the Company.

You shall agree to hold the names of our investors strictly confidential for a period of twenty-four months from the closing of the offering, except as required by law. Furthermore, you agree not to solicit future investments from our investors without our express written permission, and at such time that any investment by such investors is consummated, shall entitle us to a placement fee of six (6) percent.

In addition the following Nondisclosure/Non circumvent shall be made a part of the agreement to enable discussions to take place freely between us concerning a possible private placement of securities, or the sale of assets or other financing (the "Transaction") between CCI Group, Inc. (the "Company") and Westrock Advisors, Inc. ("us"), it will be necessary and desirable for each of the parties and their affiliated designees to disclose to the other party certain non-public, confidential, or proprietary business and technical information that each will designate in writing as proprietary and confidential. In addition, each party may permit the other party to visit its facilities during which visits the other party may observe or acquire non-public, confidential, or proprietary information relating to the disclosing party and its business (collectively with the information identified in the preceding sentence and including any information disclosed prior to the date of this letter, as to each party, the "Information"). Both parties desire to assure that the Information shall be used only for purposes of evaluation in connection with our discussions regarding the Transaction and that each party shall protect the information of the other party in accordance with the terms and conditions of this letter ("Agreement").

1. Each party shall maintain in secrecy all Information disclosed to it using the same safeguards as customarily used to protect confidential information of a similar character, but at least using reasonable care. Except for the evaluation provided herein, neither party shall use or disclose in any manner to any third party (other than to that party's attorneys, accountants, or other advisors under the same restrictions herein imposed) any Information without the prior express written consent of the disclosing party unless or until the Information is:

(a) Already known to or otherwise in the possession of the receiving party at the time of receipt of the Information from the disclosing party;

(b) Already known to or that becomes known to you as a result of its independent pursuit of programs and proposals similar to those of the Company's;

(c) Publicly available or otherwise in the public domain;

(d) Rightfully obtained by the receiving party from any third party without restriction and without breach of this Agreement by the receiving party; or

(e) Disclosed by the receiving party without restriction pursuant to judicial action, or government regulations or other requirements, provided that the receiving party has notified the disclosing party prior to that disclosure and cooperates with the disclosing party if it elects to pursue legal means to contest and avoid the disclosure.

2. Nothing in this Agreement shall be construed as granting either party expressly, by implication, estoppel or otherwise any license under or any right to use (a) any Information received from the other party) except the limited right to use the Information for evaluating the Transaction as specifically provided herein, or (b) any patent, trademark, or copyright now or hereafter owned or controlled by either party.

3. The Information shall remain the property of the party to which it belonged prior to the date of this Agreement. If the Transaction is not consummated or is no longer being considered, or if for any reason either party so requests prior to consummation of the Transaction, upon the written request of the disclosing party, the receiving party shall (a) destroy all copies (in whatever media) of any analyses, compilations, summaries, studies, or other documents prepared by the receiving party or its representatives based, in whole or in part, upon the Information, and (b) remove from the receiving party's computer systems any software provided by the disclosing party as part of the Information. An appropriate representative of the receiving party shall certify in writing to the disclosing party that no Information (including copies, summaries,

analyses, studies, other documents based upon Information) remains in the possession of the receiving party or its representatives and that any software of the disclosing party has been removed from the receiving party's computer systems.

4. Without the prior consent of the other party, neither party shall, and both parties shall direct their respective representatives not to, disclose to any person the fact that any discussions or negotiations are taking place concerning the Transaction, any terms, conditions, or other facts under consideration with respect to the Transaction, or the status of the discussions relating to the Transaction.

5. Each party shall restrict access to Information delivered under this Agreement to those persons needing to have the Information for the evaluation and shall inform and instruct those persons as to the applicable restrictions and the confidential nature of the Information.

6. This Agreement may be amended or modified only by a written agreement executed by both parties.

7. New York law shall govern the interpretation, construction, and enforcement of this Agreement, notwithstanding any state's choice of law rules to the contrary.

8. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

9. This Agreement contains the entire understanding between the Company and you with respect to the subject matter of this Agreement. There are no representations, promises, warranties, covenants, or undertakings other than those expressly set forth or provided for in this Agreement.

10. All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns.

11. All notices, requests, or other communications that may be made pursuant to the terms of this Agreement shall be in writing and delivery shall be deemed sufficient in all respects and to have been duly given on the date of service if delivered personally or by facsimile transmission if receipt is confirmed to the party to whom notice is to be given, or on the third day after mailing by first-class mail, return receipt requested, postage prepaid, and properly addressed to the addresses set forth on the first page of this Agreement or to such other addresses as the respective parties hereto shall from time to time designate to the others in writing.

12. The obligations under this confidentiality Agreement shall expire one year from the date of this Agreement as to the Information and the Transaction.

13. Each person executing this Agreement on behalf of an entity represents and warrants that he or she is duly authorized to execute and deliver this Agreement on its behalf of that entity and that this Agreement is a valid and binding obligation of that entity. This Agreement shall be binding upon and shall inure to the benefit of and be enforceable by the respective successors and assigns of the parties hereto.

Please confirm your agreement with the foregoing by signing the enclosed copy of this letter in the space provided below and returning the copy to my attention, it is also agreed that a copy sent by facsimile shall be deemed to be an original for the purposes of this Agreement. The signature of the individual on your behalf shall bind you and your partners, employees, representatives, affiliates and agents to the terms hereof and shall constitute conclusive evidence of such person's authority to act on your behalf. Such individual hereby represents and warrants that he or she has full power and authority to act for and on behalf of you.

Representations and Warranties

The Company represents warrants and agrees with you for the benefit that:

a) On the date hereof the Company is, and at all times to and including the time the Securities and/or Assets are sold by the Company (the "Closing Time") will be, duly incorporated, validly existing and in good standing as a corporation under the laws of the State of Utah with full power and authority to conduct its business as now being conducted and to own its properties and to perform its obligations under this Agreement.

b) All action required to be taken by the Company as a condition to the sale of the Securities and/or Assets to qualified purchasers has been, or prior to Closing Time will have been, taken and upon payment and delivery therefore the Securities will be binding obligations of the Company enforceable in accordance with their terms except as such enforceability may be limited by bankruptcy, insolvency, reorganization and other laws or equitable principles now or hereafter enacted relating to or affecting the enforcement of creditor's rights generally.

c) From the commencement of the Offering Period through Closing Time, the Offering Documents will not contain an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading; provided, however, that the

representations and warranties in this paragraph shall not apply to statements contained in or omitted from the Offering Documents made in reliance upon or in conformity with information furnished to the Company by you or on your behalf or omissions from the Offering Documents relating to you or your activities with respect to the Company and/or the Securities.

d) There is no litigation or governmental proceeding pending, or the knowledge of the Company threatened, against, or involving the property or business of the Company which would materially and adversely affect the financial condition of the Company.

e) The balance sheet and income statement of the Company, present fairly the financial position of the Company as of the dates thereof, and there has been no material adverse change in the financial condition of the Company since the date of the most recent of such financial statements.

f) The forecasts of operating expenses, estimated cash flow, taxable income, depreciation and the assumptions on which they are based which are expected by the Company to be included in the Offering Documents, are believed by management of the Company to be reasonable.

It is further agreed that reference to all fees, and amounts raised shall be in US dollars.

If the foregoing is in accordance with your understanding of our agreement, kindly sign and return to us a counterpart hereof whereupon this Letter Agreement together with all counterparts hereof shall become an effective Letter Agreement, binding between the Company and Westrock Advisors, Inc.

ACCEPTED AND AGREED TO:

CCI Group, Inc.

By: Mark C. Casolo
Mark C. Casolo

Date: 6/23/05

Westrock Advisors.

By: 
~~Greg Martino~~ Don Hunter

Date: 6/23/05